Thomas Ricotta with the Law Firm of Ricotta and Marks. We filed this appeal on behalf of Ms. Chen and the focus of our appeal was on the lower court's determination to dismiss on summary judgment her ADA age discrimination claim. We believe that in assessing the facts that were reduced through discovery and applying the summary judgment standard that the court overstepped in reaching determinations on the facts that were put before the court in a light that was not most favorable to the plaintiff as should have been. The court in its summary judgment determination found and established and we believe correctly established that the plaintiff sufficiently established her prima facie case on her age discrimination claim in that she established that she was subjected to an adverse employment action and that there were facts upon which an inference could be reached that age, that but for her age, actions would not have been taken. Where we think the court respectfully went astray is in then shifting the burden in the McDonnell-Douglas analysis to the employer and receiving their position as to a legitimate business reason. The court then found that the plaintiff was unable to then establish facts upon which a reasonable jury could deem those legitimate business reasons to be pretext. All right, so why don't you, and I'm with you so far, but why don't you focus on just marshaling what facts you think the court overlooked and had to accept as favorable to Ms. Chen that we should be persuaded gives her the right to a trial. Sure. So the adverse action related to the argument that Ms. Chen should have been subjected to a 30-day suspension for insubordination, for violating a policy in that she did not submit a request for leave form. She did. She did submit that request for leave form, and I don't think it's in dispute that she submitted it. The issue at play was that they wanted her to indicate that on the two dates in question she was sick and the other day she took a personal day. She advised them that I can't do that. I believe that would be falsifying the document because the reality of the circumstance was there were issues with her schedule for that semester. She did not believe and was not aware at that time that she was scheduled to teach the two classes in question, so she wasn't at the school simply because she didn't know she needed to be at school for those courses. So, you know, it was couched as though she was being insubordinate when in fact she was being asked to do something that I can't imagine is an acceptable process or policy for the college in that they're asking her to submit a document that inaccurately reflects what her leave was. So this one factor that you can establish pretext is that the employer, the defendant, is engaging in conduct contrary to normal policy and procedure. In this case, there were two ways in which they did that from our perspective. Number one, they're asking her to submit a leave form that they know to be not accurate and for her to sign off on leave saying that she was sick on a day that they know and she knows she was not and that she took a personal day on a day they know and she knows she did not. And, again, in these cases, you look at the totality of the circumstances. This was not a circumstance and a situation where there were not previous issues between her and her supervisor. So trust is not at a premium here. So for her to be getting told by her supervisor, hey, falsify that document and submit that to me, understandably, she's hesitant and she's not willing to do that because she's not sure what they're going to then do next if she does do that. So on top of that, she had a prior agreement that the 30-day suspension would be implemented only by certain individuals. In this case, it wasn't implemented by that individual. So our argument is that there was a deviation from those policies and procedures that would indicate or could indicate to a reasonable fact finder that the legitimate business reasons here were pretext. But the most compelling and the most important fact that I believe indicates that there were questions of fact as to whether there was pretext are the statements by her supervisor, Mr. Breeden, who made statements reflecting that she'd been there for 30 years, she'd been there a long time, that maybe she should retire to her on multiple occasions. There was evidence that previously when they sought to discipline her, that he was pushing for her termination. And even when he was told that that might be a bit of a stretch, he would say, well, I know, but hopefully that will force her and push her to retire. So there were — on top of the irregularities in terms of what they were asking her to do, how they handled her suspension, there's also evidence at play that — The right to claim, though, is just for the 30-day suspension? Yes. It's not a termination. It's not a termination. It is a 30-day suspension. And is she still working? She is. So in addition to the procedural irregularities, there was evidence of a discriminatory animus based on age, and from our perspective, with all due respect to the lower court, we believe there was enough evidence that was adduced through discovery and presented to the court on summary judgment that at that point the court should have appropriately identified there is an issue as to intent, which is what most of these employment cases ultimately come down to, and that that is an issue ultimately for a jury to decide one way or another, whether they believe that age was motivation for some of these things that were done or not. And so from that, for that reason, and I know I have some more time, but I don't think I have anything further unless there's any questions, but for that reason, we believe that the decision to grant summary judgment as it relates to the ADA claim, ADA claim, should be reversed. Thank you. Thank you, Mr. Ricotta. And you have noted you do have time for rebuttal after we hear from Mr. Sherman. Good morning, Your Honors. My name is Drew Sherman. I'm an assistant county attorney representing the appellees, Suffolk County Community College and the County of Suffolk. Good morning. Good morning. It is respectfully submitted that the Court below got it right. So could you turn then to Mr. Ricotta's last point, essentially, that there was some evidence of discriminatory animus based on age and say, tell us why that, why it shouldn't go back on that issue? First of all, Mr. Ricotta is referring to a statement made by Professor Breeden back in 2010. The suspension, the adverse action was taken in 2012. In his appellate brief, he's parsed out some of what Professor Breeden stated when he mentioned that maybe you should retire, you've been here so long. She's been employed by the college and is still employed by the college since 1967. But basically the statement, I'll refer you to actually 392 in the appendix, where Chan omits the words, completely miserable alone since the first day I was hired as an adjunct over 30 years ago. Very sad, which appeared after she has been here over 40 years. So he, appellate has taken out those words and has taken it out of context. Okay? This is somebody that communicated to Professor Breeden that she had been miserable, that she was alone. It's like, you're here this long, why don't you, why don't you just retire? It wasn't with a discriminatory animus on account of her age. And really the case is about Professor Chan's inability to follow the rules of the college. And that ultimately led to that prior 2010 disciplinary proceeding. And then that resulted in the 2010 stipulation, whereby she agreed to comply with the rules and regulations of the college. And then in January 2012, almost, you know, well over a year later, she again did not comply with the rules and regulations. Because she didn't show up for work. She didn't. This was the first week of that spring 2012 semester. She knew, and the evidence shows, and then I'll refer your attention to an email sent by the union president, Ms. Mauck, who, which confirmed that Ms. Chen was aware that she was assigned to those labs, which were on January 24th and January 26th. Regardless, she did not appear, did not contact anybody at the college. And after that, pursuant to the rules and regulations of the college and the union contract, she was supposed to submit the leave report online by the eighth day of the following month, which would have been February 8th. She did not do so. The record indicates several communications between Professor Breeden and Professor Chen, as well as actually Mr. Tempera, the vice president in personnel of the college, giving her, telling her that she needed to submit a leave report and to also, that the college would allow her to take a personal day and a sick day, even though she's never given any reason whatsoever for those two missed labs. So what you just said is in substance your response to what Mr. Ricotta characterized in his argument as the college forcing her to write down something that was not true? Something, if you submit a leave report and you miss time, you have to designate a reason and a day. And I think the college acted reasonably. And they gave her until February 29th to submit the leave report. She refused to do so. It did not choose to take any action against her until March 1st. Basically, the college bent over backwards for her. And, you know, this is the 30-day suspension. That was in accordance with the stipulation back in 2010 of the progressive disciplinary procedures, which is the first offense, 30 days, second offense, 60 days, third offense would be termination. But we're only talking about the first offense and the 30-day suspension.  And, really, when you look at the actions of the college, there was a reasonable basis to conclude that the college made a good faith business determination that she had violated the 2010 stipulation and, therefore, proceed with the 30-day suspension. And when — sorry, just, I was trying to remind myself. When was — when did this occur? When did these events occur? The events as far as leading to the suspension? Yeah, that — Okay. — that bring you all here. But what were the underlying events at the college and her termination — Was the — — or suspension. It's the third week — third or fourth week in January 2012. Thank you. Okay. The first two dates of this — that Professor Chen was scheduled to teach was the 24th and then the 26th. And they were chemistry labs. All right. But it was 2012. 2012. Right. So six years ago. Yes. Okay. Okay. The other point I want to address is as far as what Mr. Mercado has mentioned about procedural irregularities. I would refer to the court — refer the court to the Petrovich — Petrovich case, which is indicated on page 20 of my brief, where the fact that there may have been some procedural irregularities without more is insufficient to raise a tribal issue of fact of discrimination. Also, irregularities that Mr. Mercado has pointed to include the fact — the purported fact that the college president took no — had no involvement in the suspension of Professor Chen. But Mr. Potempara's deposition testimony clearly states that the president was consulted before the suspension was undertaken. Furthermore, there was an — as far as the 2010 stipulation, there was an indication that the college compliance officer or designee would have the ability to act on the terms of the stipulation. And Mr. Mercado has attempted to argue that Mr. Potempara was not that designee. But as vice president and personnel, I think it would be a fair conclusion to reach that he was authorized to act in accordance with that stipulation on behalf of the college. And therefore, I would submit that the appellant has failed to provide sufficient proof that the college's explanation for her suspension was pretextual. And I would also just call Your Honor's attention to this Court's prior decision in Chen v. CUNY, which is factually similar, although it did not involve an ADEA claim. This is — that case was also an Asian female professor who claimed that she was discriminated against as a result of her gender and her national origin. But I just say, in that case, the college determined that she engaged in misconduct with respect to her colleagues as well as to a student. Likewise, I would submit that the college here has determined that Professor Chen engaged in misconduct in violation of the 2010 stipulation and would submit that this Court from the judgment below. I have one quick question. You mentioned a union rep or Ms. Maut, I believe. Maut. M-A-U-K. K. Right, Ms. Maut. And I didn't note it in the record of the case, and it's probably immaterial to our determination, but did she have rights with respect to a union contract? She did have rights, and the union chose not to file any grievance with respect to this suspension. Thank you. Thank you, Your Honor. Mr. Ricotta, you've reserved three minutes. I didn't think I'll need three minutes, Your Honor, but just a couple of points I would want to address. So with respect to the agreement that it was alleged that my client breached that justified the 30-day suspension. This was the first agreement that she signed off on? Yes. Okay. So the record is clear. At no point has the college alleged that that 30-day suspension relates to her missing those, allegedly missing those two courses. So she wasn't suspended because she missed those. They didn't pursue a suspension because of that. The suspension was sought because she did not sign that. She did not, according to them, properly fill out the leave request form. So I think, to some degree, that is. Aren't those two tied together? I mean, it seems to me it's totally factual for the court below to assume, look, you missed two days. It's not disputed that she missed those two labs, right? Well, it's disputed from the standpoint of we believe the evidence in the record, including an email from our client, indicates that as of Tuesday, and the dates were January 24, 2012, 25th, and 26th. So as of Tuesday, the 24th, she had sent an email saying, if the school wants me to handle those two morning labs on Tuesday and Thursday, I would be open to that. She then doesn't receive any confirmation in any way, shape, or form until the afternoon of Wednesday, at which point she had left the campus, which, again, there's no evidence to indicate. She didn't have any courses. She didn't have any reason that she needed to be at the campus. So there's no evidence to suggest that it was inappropriate that she wasn't at the campus. She then returned to the campus Thursday morning, saw the email, and at that point found out that they had said, yes, we're going to assign you to those two labs. So from her perspective, as she conveyed to them, I did not know you wanted me to be at either of these labs. I don't agree that I, in any way, certainly not intentionally, missed courses that I was supposed to be covering. And she subsequently had a conversation with her supervisor where he said, I'm not going to suspend you for missing those two days, but I will suspend you if you miss further dates. She never missed another day. So it's, I think, not in dispute that the suspension had nothing to do with the fact that the actual fact she missed those days, but ultimately was brought because she did not fill out the leave request form as they wanted her to do. And again, for the reasons outlined, I won't revisit them. She had a history with them that led her to feel it was not a prudent decision for me to falsify a form that I'm submitting in terms of why I was not present when I've conveyed to them and they know my position. And I wasn't there because I didn't think my schedule was set and that I was supposed to cover those days yet. Other than that, I think a lot of what I would say is sort of rehashing what I said before, so I will leave it at that and I thank you for your time. Thank you.